UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PETER BOOKER,

        Petitioner,

v.                                        Case No. 3:18-cv-839-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Peter Booker, an inmate of the Florida penal system, initiated this action on July 5, 2018, by filing, with the assistance of counsel, a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1), with a memorandum of law (Memorandum; Doc. 1-1). In the Petition, Booker challenges a 2016 state court (Nassau County, Florida) judgment of conviction for robbery with a firearm. Booker raises one ground

for relief. <u>See</u> Petition at 5.[1] Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Florida Department of Corrections' Answer to Petition for Writ of Habeas Corpus (Response; Doc. 10) with exhibits (Resp. Ex.). Booker filed a brief in reply. <u>See</u> Reply in Response to Florida Department of Corrections Answer to the Petition for Habeas Corpus Relief (Reply; Doc. 16). This case is ripe for review.

## II. Relevant Procedural History

On August 6, 2013, the State of Florida (State) charged Booker by way of Information with robbery with a firearm. Resp. Ex. 3A at 19. Booker, through counsel, filed a motion to suppress Alcir De Souza's out of court identification of him in a photo lineup because De Souza viewed it and identified Booker while consulting with two men who were with De Souza at the time Booker robbed him. <u>Id.</u> at 25-32. The prosecution stipulated that the identification occurred "in an overly suggestive manner." Resp. Ex. 6A at 32; Resp. Ex. 8 at 84-85. Booker proceeded to trial, at which the State asked De Souza to make an in-court identification of Booker as the suspect. Resp. Ex. 6A at 77-78. Defense counsel objected. <u>Id.</u> The trial court overruled the objection, at which point Booker became upset and began ranting in front of the jury about the unfairness of the proceedings and also accused De Souza of lying. <u>Id.</u>

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Thereafter, the trial court ordered Booker removed from the courtroom and proceeded to continue with the trial until the trial court had a discussion with the parties outside the presence of the jury. Id. at 110-12. Following that discussion, the trial court declared a mistrial, credited it to the defense due to Booker's outburst, and found Booker to be in criminal contempt. Id. at 112-14.

Prior to his second trial, Booker filed two motions to suppress De Souza's out of court and in court identification of Booker, one focusing on a previous discussion with the prosecutor concerning her intentions not to use De Souza as an identifying witness and another duplicating Booker's original argument regarding the out of court identification. Resp. Ex. 3A at 58-60, 65-72. The trial court held a hearing on the motions, after which it denied relief. Resp. Ex. 8. Following the second trial, a jury found Booker guilty of robbery, and further found that Booker carried and possessed a firearm during the commission of the offense.[2] Resp. Ex. 3A at 104-05. Booker moved to dismiss the charges because of prosecutorial misconduct based upon the State's handling of De Souza's out of court identification. Resp. Ex. 3B at 10-14. The trial court denied the motion to dismiss as legally insufficient without further explanation. Id. at 15. Booker later filed a supplemental motion to dismiss based on new evidence obtained from a Florida Bar inquiry regarding the prosecutor assigned to his

---

[2] The verdict form Respondents provided lacks a date and signature and also contains strange marking on it. However, Booker does not deny that a jury convicted him.

case. Id. at 42-54 During that inquiry, the prosecutor stated in a written response to the Florida Bar that she and De Souza "developed a signal whereby at trial he would notify me whether or not he was able to identify the suspect."[3] Id. at 43. The trial court denied the motion. Id. at 57. On May 19, 2016, the trial court sentenced Booker to a term of incarceration of twenty-five years, with a ten-year minimum mandatory. Id. at 63-72.

Booker appealed to Florida's First District Court of Appeal (First DCA). Id. at 85-92. In his amended initial brief, Booker, with the assistance of counsel, argued that the trial court erred is denying his motions for mistrial and the trial judge should have disqualified himself prior to ruling on his posttrial motions. Resp. Ex. 9. The State filed an answer brief. Resp. Ex. 11. On July 6, 2017, the First DCA per curiam affirmed Booker's conviction and sentence without a written opinion. Resp. Ex. 13. The First DCA issued the Mandate on July 24, 2017. Resp. Ex. 14.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

---

[3] Respondents provided a copy of the prosecutor's response to the Florida Bar inquiry that includes this quote. Resp. Ex. 6A at 207

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Booker's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.

2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied

---

[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).
[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting

12

Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## VI. Findings of Fact and Conclusions of Law

In the Petition, Booker contends that his second trial following a mistrial in his first trial "should have been barred by the double jeopardy clause." Petition at 5. Booker contends that during his first trial, the defense and prosecution agreed that the victim's out of court identification of Booker in a photo lineup was unconstitutional and inadmissible. Memorandum at 2-3. According to Booker, the prosecutor wrote an email to Booker's counsel stating there was no need for a suppression hearing as she was not going to attempt to introduce the photo lineup. Id. at 3. Additionally, the prosecutor stated she did not think the victim would be able to identify Booker in court, so she "would be proceeding solely on the identification" by two other witnesses. Id. However, during the trial, the prosecutor and victim "created a way for the witness, WHILE TESTIFYING, to indicate to the prosecutor, through a signal only known to both the prosecutor and the witness, whether he could identify the Defendant in court." Id. at 3-4 (emphasis in original). During the first trial, the victim signaled to the prosecutor he could identify Booker as the suspect and the prosecutor thereafter asked a question eliciting an in-court identification

of Booker. Id. The prosecutor later admitted to doing so during a Florida Bar inquiry. Id. at 4.

Once this occurred during trial, defense counsel objected and moved for a mistrial but was overruled, and then Booker reacted negatively in open court, causing the trial court to send Booker out of the courtroom. Id. at 4-6. Thereafter, the trial partially continued without Booker being present. Id. at 6. At some point, the trial court conducted a discussion with the parties that ultimately resulted in a mistrial credited to Booker's outburst in court. Id. at 7.

According to Booker, prior to the second trial, the State "retreated from its admitted and agreed to position that the identification procedures at the pre-trial photo lineup was [sic] impermissible and stated it would seek to introduce the results of same during the second trial in this case in chief." Id. The State also said it would introduce the victim's in-court identification of Booker. Id. During the second trial, the State introduced both. Id. Booker maintains that "[o]nce jeopardy attached [following the first trial] and this trial began the Respondent [sic] was entitled to rely upon such an AGREEMENT with the State and the inherent limitation of their evidence was essential to the Petitioner's potential success at trial." Id. at 8 (emphasis in original).

Booker argues that the trial court's determination that the mistrial was attributable to Booker "carries no weight nor presumptive correctness before

this Honorable Court." Id. According to Booker, "[t]he State caused this situation through deception, illegal proceedings and will now seek to blame the Petitioner for his regrettable, but understandable, reaction to the same." Id. at 9. Booker contends that the prosecutor's bad faith conduct was the cause of the mistrial and, therefore, the Double Jeopardy Clause barred the State from retrying him. Id. at 10. Booker further contends that the State benefited from this mistrial as it allowed it to present evidence of the photo lineup in the second trial. Id. at 11-12. To that end, Booker maintains that the prosecutor purposely goaded Booker into seeking a mistrial. Id. at 12. Additionally, he asserts that the trial court "overreacted" when it ordered Booker removed from the trial and did not immediately order a mistrial at that time but instead let the trial proceed a bit more before ordering such. Id. at 10-11. Therefore, Booker avers that there was no manifest necessity for a mistrial ruling at the time the trial court actually declared a mistrial. Id. at 11.

Respondents contend that this claim is unexhausted. Response at 18-19. In the Petition, Booker admits he did not raise this claim on direct appeal because he "was represented by a different counsel who submitted an appeal on other grounds." Petition at 6. Likewise, he did not raise it in a postconviction motion. Id. In his Reply, Booker argues that this concession in the Petition did not amount to him admitting he failed to exhaust this claim. Reply at 2. According to Booker, Respondents do "not suggest what remedies should have

been utilized prior to the filing of the Writ at bar that were not exhausted by the Petitioner." Id. at 4. Additionally, Booker claims that he had no other alternatives but to file his federal habeas petition in this Court. Id.

The record reflects that Booker did not raise a double jeopardy claim on direct appeal, Resp. Ex. 9, and he has not otherwise raised this issue before the state court via postconviction motion.[8] As the State court was not given an opportunity to rule on this issue, it is unexhausted. Booker has failed to allege cause and prejudice to overcome this issue and has not asserted he is actually factually innocent. Accordingly, the Petition is due to be denied as unexhausted.

Regardless of Booker's failure to exhaust this claim, Booker is not entitled to relief. Pursuant to the Fifth Amendment of the United States Constitution, "No person shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Also known as the Double Jeopardy Clause, this provision of the Constitution "protects a criminal defendant from repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671 (1982). However, where a defendant moves for a mistrial, the Double Jeopardy Clause does not bar retrial unless "the conduct

---

[8] Double Jeopardy claims are cognizable in a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Kerrin v. State, 8 So. 3d 395, 396 (Fla. 1st DCA 2009). However, any such motion would be untimely at this point. See Fla. R. Crim. P. 3.850(b).

16

giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Id. at 679.

Here, while perhaps crossing the line of professionalism, nothing in the record suggests the prosecutor intended to provoke Booker into the outburst that resulted in the mistrial. Indeed, presenting in-court identification testimony that the prosecutor previously represented to defense counsel that she would not introduce demonstrates the prosecutor's intention to get a conviction more so than a mistrial. See Hawkins v. Alabama, 318 F.3d 1302, 1308 (11th Cir. 2003) ("The prosecutor's conduct was concealed; the conduct was intended to obtain a conviction, not to push the defendant into moving for a mistrial before verdict."). While Booker speculates about the prosecutor's intent, he does not provide actual evidence establishing the same. Accordingly, as the mistrial was attributable to Booker's outburst and he has not proven the existence of the prosecutor's intent to provoke a mistrial, his federal habeas claim fails. See Kennedy, 456 U.S. at 679. For the above stated reasons, the Petition is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Booker seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Booker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Booker appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of April, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Peter Booker #J25445
        Counsel of record

19